IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| KAREN C., On behalf of C.C.[1] <br><br> Plaintiff, <br><br> vs. <br><br> COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,[2] <br><br> Defendant. | Case. No.: 3:17-cv-01912-AA <br> **OPINION & ORDER** |

AIKEN, District Judge:

Plaintiff C.C., a minor, through his mother, Karen C., seeks judicial review of the Social Security Commissioner's final decision denying plaintiff's application for

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

[2] Nancy A. Berryhill's term as the Acting Commissioner of the Social Security Administration (SSA) ended on November 17, 2017, and a new Commissioner has not been appointed. The official title of the head of the SSA is the "Commissioner of Social Security." 42 U.S.C. § 902(a)(l). A "public officer who sues or is sued in an official capacity may be designated by official title rather than by name." Fed. R. Civ. P. 17(d). This Court, therefore, refers to defendant only as Commissioner of Social Security.

Supplemental Security Income ("SSI") under the Title XVI of the Social Security Act. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3), which provides for judicial review of the final decision of the defendant. The decision of the Commissioner is AFFIRMED.

## BACKGROUND

Plaintiff was born on December 1, 2001, and alleges disability since June 1, 2012. Tr. at 42. Plaintiff's mother filed an application for SSI on plaintiff's behalf on April 18, 2014, when plaintiff was a school-aged child. Tr. at 18. His application for SSI is based on attention deficit hyperactivity disorder ("ADHD"). Tr. at 43, 60–62. The Commissioner denied the initial application on September 22, 2014. Tr. at 18. The claim was also denied upon reconsideration on January 20, 2015. Tr. at 18, 76–88. The Administrative Law Judge ("ALJ") held a hearing on June 29, 2016, and found the plaintiff not disabled. Tr. at 18–34. The Appeals Council denied further review of plaintiff's application, making the ALJ's decision the final decision of the Commissioner. Tr. 1. Plaintiff now appeals to this Court.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based upon proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue*, 662 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r Soc. Sec.*, 740 F.3d 519, 522 (9th Cir. 2014)

(citation and quotation marks omitted). The court must weigh "both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). If the evidence is subject to more than one interpretation but the Commissioner's decision is rational, the Commissioner must be affirmed because "the court may not substitute its judgement for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## DISABILITY ANALYSIS FOR CHILDREN

The Commissioner must determine if the claimant is disabled under § 1614(a)(3)(C) of the Social Security Act. In childhood disability determinations, the Commissioner applies a three-step evaluation process that asks (1) whether the claimant is engaging in substantial gainful activity; (2) whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe"; and (3) whether the claimant has an impairment or combination of impairments that meets or medically equals the severity of the listing, or that functionally equals the listings. 20 C.F.R. § 416.924(a).

In determining whether the claimant has an impairment that functionally meets or medically equals the severity of the listing, the Commissioner must assess the claimant's functioning in terms of six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relation with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(d). To functionally equal the listings, the claimant's impairment or combination of impairments must result in

"marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a. A "marked" limitation is one that "interferes seriously with your ability to independently initiate, sustain, or complete activities . . . the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." 20 C.F.R. § 419.926a(e)(2)(i). An "extreme" limitation is one that "interferes seriously with your ability to independently initiate, sustain, or complete activities . . . the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean." 20 C.F.R. § 419.926a(e)(3)(1). A variety of evidential sources are used in such determinations, including medical records, test scores, information from parents, teachers, and school personnel. 20 C.F.R. § 416.926a. Although limitations must result from a medically determinable impairment, the Commissioner looks to a child's functioning in comparison to his peers. 20 C.F.R. § 924(b)(1–3).

## THE ALJ'S FINDINGS

At step one, the ALJ found plaintiff has not engaged in substantial gainful activity since the application date. Tr. 21. At step two, the ALJ found plaintiff's attention deficit hyperactivity disorder to be a "severe" impairment under 20 C.F.R. § 416.924(c). Tr. 21. At step three, the ALJ found plaintiff's impairments did not meet or medically equal the severity of one of the listed impairments. Tr. 21. The ALJ further found that the plaintiff does not have an impairment or combination of impairments that functionally equals the severity of the listings. Tr. 21.

# DISCUSSION

Plaintiff challenges the ALJ's finding that plaintiff did not meet, equal, or functionally equal Listing 112.11 for ADHD, with marked limitations in (1) acquiring and using information and (2) attending and completing tasks. Tr. 28–29. Plaintiff contends the ALJ committed at least four harmful errors. Specifically, plaintiff argues that the ALJ erred in (1) failing to credit the testimony of plaintiff's second grade teacher; (2) failing to credit the plaintiff's mother's testimony; (3) failing to credit plaintiff's testimony about his symptom severity; (4) failing to give appropriate weight to the medical opinion of Dr. Glassmire; and (5) concluding that plaintiff's impairment did not functionally equal the listings. Throughout, he argues that plaintiff is disabled because his ADHD functionally equals the childhood disability listing. I address each argument in turn.

## A. Lay Witness Testimony and Plaintiff's Testimony

Plaintiff submitted that the ALJ erred in failing to credit the lay witness testimony of (1) plaintiff's second grade teacher Lynne Leake; (2) plaintiff's mother; and (3) plaintiff's subjective symptom testimony. The regulations direct that the ALJ may consider lay testimony addressing the severity of a claimant's limitations, or if you are a child, "how you typically function compared to children your age who do not have impairments." 20 C.F.R. § 416.913(d). The ALJ must give germane reasons in rejecting lay testimony, and such testimony cannot be disregarded without comment. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993); *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). Such germane reasons must be specific to the lay witness. One

reason to discredit the testimony of a lay witness is that it conflicts with other medical evidence. *See Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). Each assignment of error regarding lay witness testimony is addressed below.

**1. Lay Witness Testimony: Lynne Leake**

Ms. Leake was plaintiff's second grade teacher and completed a teacher questionnaire on August 20, 2014, that assessed plaintiff during the 2013–2014 academic year. Tr. 180–87. Ms. Leake found that plaintiff was close to meeting reading and math levels but struggled with certain tasks such as writing, and plaintiff required redirection. Tr. 180–87. Ms. Leake rated plaintiff as having "a serious problem" in acquiring and using information and a "very serious problem" in attending and completing tasks. Tr. 181–82.

The ALJ gave Ms. Leake's assessment little weight, explaining that "[h]er assessment does not square with the medical and educational records showing mostly average objective test scores, the improvements in the plaintiff's behavior with medication and counseling, mental status examinations and notations of the plaintiff being able to read chapter books and perform more multiplication, division, and fractions." Tr. 27.

Plaintiff argues that the ALJ failed to properly consider Ms. Leake's "direct knowledge" acquired during the 2013–2014 academic year. Pl.'s Br. at 10 (doc. 12). However, the ALJ assessed Ms. Leake's testimony with the record as a whole and identified other evidence that contradicts her testimony regarding plaintiff's limitations. The ALJ stated "Ms. Leake[] overestimates the claimant's limitation in

the first two domains. Her assessment does not square with the medical and educational records showing mostly average objective test scores [and] improvements in the claimant's behavior with medication and counseling." Tr. 27. Thus, the ALJ identified a germane reason, and did not err in rejecting Ms. Leake's testimony, even if that testimony was based on her "direct knowledge" of plaintiff's past behavior and academic performance. *See Nguyen*, 100 F.3d at 1467.

### 2. Lay Witness Testimony: Plaintiff's Mother

Plaintiff's mother provided a function report in June 2014 and testified at the hearing on June 29, 2016. Tr. 49–53, 159–70. In the function report, plaintiff's mother reported that the plaintiff does not listen to her and says "no" to instructions, although he can communicate and can make new friends and get along with adults. Tr. 167. Plaintiff's mother indicated the plaintiff cannot sit and complete a simple story and needs reminders to follow safety rules and "constant redirection." Tr. 159–70. At the hearing before the ALJ, plaintiff's mother testified that the plaintiff has behavioral issues, crying spells, and has trouble getting along with others. Tr. 50. She also testified that plaintiff suffered a loss of appetite when medicated for his ADHD and continued to not meet academic benchmarks. Tr. 52.

The ALJ gave this assessment little weight. Tr. 26. The ALJ found that the plaintiff's mother's "hearing testimony and written function report appear significantly at odds with one another in the severity of the claimant's symptoms," nor does it align with the medical and educational records showing mostly average test scores and improvements in the claimant's behavior. Tr. 26.

Plaintiff argues that the ALJ erred because the ALJ misstated the record and failed to identify "even one specific inconsistency." Pl.'s Br. at 17. However, the ALJ observed, *inter alia*, that the plaintiff's mother indicated "[t]he claimant has friends, can make new friends, gets along with his mother and other adults" in the 2014 function report, but later testified at the hearing that "claimant [has] behavior issues, crying spells, [and] difficulties interacting with others and frequent meltdowns." Tr. 26; *compare* Tr. 50 *and* Tr. 167. Although parents and caregivers can be important sources of information because they generally see the plaintiff every day, the testimony of plaintiff's mother "does not square with the medical and educational records showing mostly average objective test scores [and] the improvements in the claimant's behavior with medication and counseling." *See Nguyen*, 100 F.3d at 1467. As a result, the ALJ correctly gave a germane reason—inconsistencies between the witness's own statements and the other educational and medical evidence on the record—and did not err in rejecting the testimony of plaintiff's mother.

### 3. Credibility Evaluation: Plaintiff's Subjective Symptom Testimony

A claimant's credibility is often about whether his symptom severity and resultant functional impairment is reliable. *See Molina v. Astrue*, 674 F.3d 1104 (9th Cir. 2012). A plaintiff's subjective symptom testimony includes hearing statements, but also medical and professional reports. 20 C.F.R. § 416.929. The ALJ's reasons for rejecting the plaintiff's symptom allegations must be articulated in a clear and convincing manner. *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014); *Smolen*

*v. Chafer*, 80 F.3d 1273, 1281 (9th Cir. 1996). At the time of the hearing, the plaintiff was a ten-year-old male who testified that he was moving on to the fifth grade, played soccer, and had "lots of friends." Tr. 54. The ALJ looked to the plaintiff's mother's description of the difficulties that arise from the plaintiff's dyslexia and ADHD. Tr. 22. The plaintiff's mother described the plaintiff as having behavioral issues, crying spells, difficulties getting along with others and trouble interacting, as well as frequent meltdowns when something does not go right or his medication wears off. The plaintiff is on an Individual Education Program (IEP) due to his learning disability. Tr. 22. Additional difficulties that plaintiff's mother testified to include a loss of appetite due to medication and that caring for the plaintiff is a "full-time job" as she fights with him daily about his homework and his behavior.

The ALJ found that although the plaintiff's ADHD could be reasonably expected to produce the alleged symptoms, the statements concerning the "intensity, persistence and limiting effects of these symptoms are not entirely consistent with . . . other evidence in the record." Tr. 22.

Plaintiff argues that the ALJ did not properly credit the plaintiff's own symptom allegations and erred in failing to identify conflicts between the plaintiff's allegation and the evidence. Pl.'s Br. at 18. However, the ALJ did identify such conflicts by indicating the record reflected inconsistencies with the reported severity of symptoms in the following ways: (1) objective test records showed the plaintiff having average skills compared to his peers; (2) the plaintiff's mother resisted medication treatment, despite the evidence in the record showing its effectiveness;

(3) the plaintiff does not appear to be down two levels in any subject; (4) educational records show the plaintiff responds well to individual attention and feedback. Tr. 23–24. The ALJ's evaluation of the record and articulation of the discrepancies between the reported severity and the medical and educational evidence meets the clear and convincing standard. Thus, my review of the record persuades me that the ALJ met the appropriate burden for rejecting the plaintiff's credibility as it relates to his symptom allegations. Accordingly, there is no error here.

### B. Medical Opinion of Dr. David Glassmire

The Ninth Circuit distinguishes between treating, examining, and reviewing physicians in its review of the Commissioner's disability determinations. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating physician's opinion must be given controlling weight if the opinion is well supported and consistent with other substantial evidence in the record. *Edlund v. Massanari*, 253 F.3d 1153, 1157 (9th Cir. 2001); *Nguyen v. Chater*, 100 F.3d 1462, 1466 (9th Cir. 1996) (citing *Lester*, 81 F.3d 821, 831). An examining physician's opinion is in turn given greater weight than the reviewing physician, and the ALJ must set out "specific and legitimate" reasons for rejecting the opinion of an examining physician for that of a reviewing physician. *Nguyen v. Chater*, 100 F.3d 1462, 1466.

Dr. David Glassmire, a clinical psychologist, acted as a reviewing physician at the request of the plaintiff. Dr. Glassmire evaluated plaintiff's records and testified at the hearing on June 29, 2016. Tr. 42–49. In his testimony, Dr. Glassmire stated that plaintiff suffers from ADHD, but likely would only meet the listing via the

functional equivalence measure. Tr. 44. Dr. Glassmire testified that plaintiff had "marked" limitations in acquiring and using information and attending and completing tasks. Tr. 45.

In rejecting the testimony of Dr. Glassmire, the ALJ offered specific and legitimate reasons. Importantly, the ALJ gave Dr. Glassmire's testimony little weight because his testimony was inconsistent with the responses of the plaintiff's treating physician. Dr. Barbara Lang is the plaintiff's primary care provider and treating physician: her opinion should be given controlling weight if it is well supported and consistent with other evidence in the record.[3] Upon reviewing Dr. Lang's report, the ALJ noted that her responses to the plaintiff's functionality found that he had less than marked limitations in acquiring and using information and completing and assessing tasks. Tr. 25–26. The ALJ stated that Dr. Lang's opinion "squares with the medical and educational records" and also "represents a compromise position in the significantly variable assessment of the claimant's teachers." Tr. 26. As the treating physician, the ALJ also indicated that Dr. Lang is best situated to assess the plaintiff's symptoms over time. Tr. 25–26.

The ALJ offered additional specific and legitimate reasons for rejecting Dr. Glassmire's testimony, beyond the great weight given to Dr. Lang. First, the ALJ stated Dr. Glassmire relied on an evaluation from 2013, which was not reflective of plaintiff's behaviors and needs at the time of the filing. Tr. 25. Second, the ALJ observed that Dr. Glassmire relied—almost exclusively—on the teacher

---

[3] It should be noted that the plaintiff did not challenge the findings or credibility of Dr. Lang, nor the ALJ's assessment of Dr. Lang's medical opinion in either of plaintiff's briefings.

questionnaire of Lynne Leake, while dismissing additional teacher questionnaires that are inconsistent with Leake's. Tr. 45–46. As discussed above, the ALJ did not find Ms. Leake's assessment of the plaintiff credible. Third, the ALJ rejected Dr. Glassmire's opinion after noting that "Dr. Glassmire appears to minimize the improvements the plaintiff received from medication, which the above record notes were significant by the plaintiff's own assessment as well as those of his providers and teachers. Tr. 25.

The plaintiff argues that the ALJ failed to offer any specific records explaining the "supposed inconsistencies," between Dr. Glassmire's opinion and the other evidence in the record, but that argument has no merit. Pl.'s Br. at 7. A reviewing physician such as Dr. Glassmire is last on the hierarchy of physician medical evidence; the opinion of the treating physician, Dr. Lang, is given controlling weight here. Even so, the ALJ did identify specific and legitimate reasons for rejecting Dr. Glassmire's testimony, as detailed above. As a result, the ALJ did not err in rejecting the medical opinion of Dr. Glassmire.

### C. Functional Equivalence

Plaintiff argues that the ALJ erred in finding that her child did not have marked limitations in the domains of "acquiring and using information," and "attending and completing tasks." Pl.'s Br. at 12–13. As noted above, an impairment is considered marked if it "seriously interferes with your ability to independently initiate, sustain, or complete activities . . . the equivalent of the functioning we would

expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." 20 C.F.R. § 419.926a(e)(2)(i).

### 1. Acquiring and Using Information

The domain "acquiring and using information" concerns how well a child can acquire or learn information, and how well the child can use that information. This domain involves the child's use of information in all settings, including how well the child can perceive, think about, and remember. 20 C.F.R. § 416.926a(g). The ALJ found the plaintiff had less than marked limitation in acquiring and using information, noting that the plaintiff, in comparison to his peers, had average skills on the Woodcock Johnson II Tests of Achievement; the plaintiff could read at grade level; write several sentences on topic; read chapter books; and complete most of his schoolwork. Tr. 28, 280, 447, 677. The ALJ highlighted "the claimant's primary care provider and the state agency consultants indicated the claimant having less than marked limitation in this domain." Tr. 29, 61, 707. The plaintiff argues that the ALJ narrowly focused "on a handful of academic records" and did not consider plaintiff's abilities in all settings. Pl.'s Br. at 13–14.

Here, the ALJ did not selectively focus on aspects of the record "which tend to suggest non-disability." *See Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001). In addition to noting the plaintiff's gains in academic skills and comparison to his peers, the ALJ also noted the plaintiff's academic growth stalled in the third term of the 2015–2016 academic year, and the plaintiff's need to have his teacher break tasks into smaller steps and provide additional support as the plaintiff became

distracted. Tr. 29, 239, 254. Although the ALJ did draw heavily from plaintiff's academic record, the regulations advise that the Commissioner should look to a child's functioning in comparison to his peers during these disability determinations. 20 C.F.R. § 924(b)(1–3). Accordingly, even though the ALJ's findings drew heavily on an academic record that is susceptible to more than one rational interpretation, there is no clear error as to the ALJ's assessment that the plaintiff's disability is one that is less than marked in "acquiring and using information."

### 2. Attending and Completing Tasks

This domain tests the claimant's ability to focus and maintain his attention and his ability to begin, carry through, and finish activities. 20 C.F.R. § 416.926a(h). Attending and completing tasks also refers to a child's ability to avoid impulsive thinking and his ability to prioritize competing tasks and manage his time. *Id.* The ALJ found that the plaintiff has less than a marked limitation in attending and completing tasks. Tr. 29. The ALJ stated "[a]lthough there may have been limitations at or prior to the protective filing date that might have reached the marked level in this domain as noted in the April 2013 psychological evaluation, they were not there for any substantial period of time." Tr. 29 (internal citations omitted).

Plaintiff contends that the ALJ erred by failing to find marked limitations in the domain of "attending and completing tasks." In support of his finding, the ALJ observed that multiple sources, including plaintiff's mother and teachers, reported significant improvements with the use of medication. Tr. 30 (referencing Tr. 186, 259, 354). Additionally, the ALJ observed that in March 2014, the plaintiff was

completing most of his homework; in May 2014, plaintiff's Individual Education Plan (IEP) indicated the plaintiff responds well to individual attention and frequent feedback; in June 2014, plaintiff stated "[s]chool went great"; in February 2014, plaintiff was fidgety but cooperative during an evaluation, and similar behaviors arose in April 2016 evaluations. Tr. 30.

Plaintiff also argues that the opinion of the medical expert, Dr. Glassmire, was "erroneously substituted" by the ALJ's own opinion. Pl.'s Br. at 16. This argument has no merit. As explained above, the ALJ properly discounted Dr. Glassmire's medical opinion. Moreover, the ALJ did not substitute his own opinion: instead, the ALJ properly gave great weight to the plaintiff's treating physician, Dr. Barbara Lang. Dr. Glassmire's opinion was rejected because it was inconsistent with that of Dr. Lang. Tr. 25–26.

Finally, the ALJ did support his findings with substantial evidence. The record reflects that plaintiff can read and write on topic. Tr. 280. Although he needs redirection, plaintiff completes drafts and assignments with the help of a checklist. Tr. 280. The ALJ did not err in determining that plaintiff does not have a "marked" limitation in attending and completing tasks.

Because the ALJ correctly found that plaintiff does not have marked limitations in the two preceding domains, the ALJ correctly determined that the plaintiff does not have an impairment or combination of impairments that functionally equals the severity of the listings.

## CONCLUSION

For the reasons stated above, the Commissioner's decision is AFFIRMED. Accordingly, this case is DISMISSED.

IT IS SO ORDERED.

Dated this 12th day of March 2019.

_____
Ann Aiken
United States District Judge